IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON KORTE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PINNACLE FOODS GROUP, LLC.,<br><br>Defendant. | Case No. 17-CV-199-SMY-SCW |

## **MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion to Dismiss (Doc. 11). Plaintiff filed a Response (Doc. 19). For the following reasons, the motion is **DENIED**.

### **Background**

Plaintiff Aaron Korte filed this putative class action against Defendant Pinnacle Foods Group, LLC ("Pinnacle") in Illinois state court. (Complaint, Doc. 2-1). Pinnacle subsequently removed the case to this Court. (Notice of Removal, Doc. 2)

This case involves a line of salad dressings sold by Pinnacle under the label "Wish-Bone® E.V.O.O. Dressing- Made With Extra Virgin Olive Oil". Plaintiff alleges that the products violate the Illinois Consumer Fraud & Deceptive Business Practices Act (810 ILCS § 505/1 *et seq.*) ("IFCA")(Count I) and the Missouri Merchandising Practices Act (§407.010 R.S.Mo, *et seq.*) ("MMPA")(Count II), and that the money realized by Defendant as a result of the alleged deceptive practices constitutes unjust enrichment (Count III). Plaintiff seeks class certification for consumers who bought the product from December 19, 2013 onward.

Defendant moves to dismiss each Count of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, as well as under *F.R.C.P.* 9(b) for failure to plead fraud with adequate particularity.

## Legal Standard

To survive a motion to dismiss for failure to state a claim under *F.R.C.P.* 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.,* 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court also draws all reasonable inferences and facts in favor of the nonmovant. *See Vesely v. Armslist LLC,* 762 F.3d 661, 664 (7th Cir. 2014).

Under Rule 9(b), a party pleading fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

## Discussion

Plaintiff alleges that Defendant "promotes, markets and sells its E.V.O.O. line of dressings in such a manner to deceive the consumer into purchasing what he or she [believes] is a true 100% E.V.O.O. product." (*Id.* at ¶ 16). In particular, Plaintiff alleges that Pinnacle's naming and marketing of the dressings in question was deceptive because although they are

made with extra virgin olive oil (sometimes abbreviated E.V.O.O. or EVOO), they are "comprised mainly of water and cheap soybean oil, and not premium E.V.O.O." (Doc. 2-1 at ¶ 16). Plaintiff also alleges that Pinnacle made several statements in a press release accompanying the introduction of the dressing that were misleading as to the EVOO content (and therefore product quality). (*Id.* at ¶ 11). Plaintiff further alleges that Pinnacle charged 25% more, on average, for the products than similar salad dressings on the basis that it was made with extra virgin olive oil. (*Id.* at ¶ 13).

Plaintiff, a Missouri citizen, purchased the product in the Fall of 2016 from a Schnuck's Market in St. Clair County, Illinois. (*Id.* at ¶ 8).

### *Food and Drug Administration Preemption*

Pinnacle first argues that Plaintiff's ICFA claim is preempted by federal law. Specifically, Pinnacle points to a provision of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343–1(a)(5), added by the Nutrition Labeling and Education Act of 1990 ("NLEA"), that prevents states from imposing "any requirement respecting any claim of the type described in section 343(r)(1) [of the FDCA] ... made in the label or labeling of food that is not identical to the requirement of section 343(r)." It contends that allowing a state consumer fraud claim for use of the phrase "Made With Extra Virgin Olive Oil" when a product contains less that a certain amount of extra virgin olive oil would be an improper imposition of differing labelling requirements.

Federal preemption is an affirmative defense upon which the defendants bear the burden of proof. *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). It applies when Congress declares its intention to preempt state regulation through a direct statement in the text of federal law ("express preemption"), by implication in the "structure and

purpose" of federal law showing a Congressional intent to preempt state law ("implied preemption"), or by an actual conflict between state and federal law, such as occurs when it is impossible for a private party to comply with both federal and state law requirements. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). In all three types of preemption, "the ultimate touchstone" is congressional purpose. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

The facts in this case raise the question of express preemption. Congress declared that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section [343–1(a)] of the [FDCA]." Section 6(c), Pub.L. No. 101–535, 104 Stat. 2353, 2364 (Nov. 8, 1990). Section 343(r)(1), upon which Defendant relies, relates to requirements for the labeling of food which:

(A) characterizes the level of any nutrient which is of the type required by paragraph (q)(1) or (q)(2) to be in the label or labeling of the food unless the claim is made in accordance with subparagraph (2), or

(B) characterizes the relationship of any nutrient which is of the type required by paragraph (q)(1) or (q)(2) to be in the label or labeling of the food to a disease or a health-related condition unless the claim is made in accordance with subparagraph (3) or (5)(D).

21 U.S.C. 343(r)(1). Sections (q)(1) and (q)(2), in turn, cover nutrients such as total fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained in each serving size or other unit of measure, as well as any other nutrient the FDA deems appropriate to add via regulation.

One of the regulations Defendant cites is 21 C.F.R. § 101.13(b), which governs requirements for claims that "expressly or implicitly characterize the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim)." However, a review of those sections fails to reveal what nutrient, express or implied, would be implicated in labeling a product "extra virgin olive oil." Indeed, 21 C.F.R.

§101.65(b)(5) specifically provides that the labeling requirements of §101.13 are generally not applicable to "[a] statement of identity that names as a characterizing ingredient, an ingredient associated with a nutrient benefit (e.g., "corn oil margarine," "oat bran muffins," or "whole wheat bagels"), unless such claim is made in a context in which label or labeling statements, symbols, vignettes, or other forms of communication suggest that a nutrient is absent or present in a certain amount[.]" Thus, these provisions do not show any federal labeling requirement for extra virgin olive oil from which a state requirement could differ.

Defendant also cites to the Seventh Circuit's Opinion in *Turek v. Gen. Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011) in support of its preemption argument. But *Turek* is readily distinguishable, as it involved a claim where the plaintiff sought to add disclaimers to labels of snack bars containing processed (as opposed to natural) dietary fiber. Fiber is one of the nutrients specifically subject to Section 343(q), and therefore does fall under specific FDCA labeling requirements for nutrient claims.

In the absence of a nutrient claim, the regulations cited by Defendant do not apply. As such, there can be no preemption of differing state law requirements. Plaintiff's ICFA claims are therefore not preempted.

### *Illinois Consumer Fraud Act*

To plead a violation of the IFCA, a plaintiff must allege "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010).

Pinnacle argues that Plaintiff's ICFA claims are subject to a statutory exception. Specifically, Section 10b provides that the statute does not apply to "[a]ctions or transactions

specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1). Defendant maintains that the labeling, "Made With Extra Virgin Olive Oil" is "specifically authorized" by the federal regulations cited in connection with its preemption argument. But as discussed above, the cited regulations appear not to require any specific labeling for extra virgin olive. Therefore, the most that can be said is that Defendant's labeling does not run afoul of those requirements. The Illinois Supreme Court has explained, however, that "conduct is not specifically authorized merely because it has not been specifically prohibited" and "mere compliance with the rules applicable to labeling and advertising is not sufficient to trigger the exemption created by section 10b(1)" . *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 36 (2005). Thus, the labeling in question is not excluded from the scope of the ICFA solely because it does not violate the cited federal regulations.

Pinnacle also argues that Plaintiff fails to make a plausible allegation that the statement "Made With Extra Virgin Olive Oil" is deceptive. Pinnacle refers to the fact that the product is actually made with extra virgin olive oil, and that the ingredient list on the back of the bottle discloses that it contains different oils and other ingredients. It also submits a picture of one of the products which purports to show the oil portion separated out from the remainder of the dressing, claiming that this separation would put any reasonable consumer on notice that the product did not consist entirely of extra virgin olive oil. (Docs. 11 at 11; 11-1). The picture is a matter outside the pleadings, and under *F.R.C.P.* 12(d), the Court may either exclude it from consideration or convert the motion to one for summary judgment under F.R.C.P. 56 and give the parties an opportunity to present materials pertinent to summary judgment. *See Jacobs v.*

*City of Chicago,* 215 F.3d 758, 766 (7th Cir. 2000). At this stage, the Court declines to consider the additional materials submitted by Pinnacle.

Plaintiff maintains that Pinnacle has misconstrued his claim; that his claim is not that the product has to be 100% extra virgin olive oil to not be deceptive, but rather that a reasonable consumer would believe that all of the oil in the product is extra virgin olive oil instead of an admixture with water and soybean oil.

When presented with a motion to dismiss alleging that a claim is not deceptive under the ICFA, "[the Court must] ask whether the allegedly false and misleading statements on which [Plaintiff] based his CFA claim can be read to create a likelihood of deception or to have the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Although there are situations where the determination of the possibility for deception can made as a matter of law, the relevant questions in this case – whether a reasonable consumer would be deceived by the products' name and label and a reasonable consumer's understanding of the terms "E.V.O.O." and "Made With Extra Virgin Olive Oil" – are not so clear-cut. Making all reasonable inferences in favor of Plaintiff, the Court cannot conclude as a matter of law that the representations are not deceptive. The possibility for deception in this situation is a question of fact, and one that Plaintiff has adequately pled.

Similarly, the fact that the back of the bottle may disclose the presence of oils and liquids other than extra virgin olive oil does not settle the issue of whether the front of the bottle may be deceptive. The "ingredient list" defense has been rejected by a number of courts, including this one. *York v. Andalou Nats., Inc.*, No. 16-CV-894-SMY-DGW, 2016 WL 7157555, at *3 (S.D. Ill. Dec. 8, 2016) *citing Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008); *Thornton v. Pinnacle Foods Grp, LLC*, 2016 WL 4073713, at *3 (E.D. Mo. Aug. 1, 2016); *Blue*

*Buffalo Co. v. Nestle Purina Petcare Co.*, 2015 WL 3645262, at *5 (E.D. Mo. June 10, 2015); *Lam v. Gen. Mills, Inc.*, 859 F.Supp.2d 1097, 1105 (N.D. Cal. 2012). That is because when analyzing a claim under the ICFA, "the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). In other words, whether listing other ingredients on the back would be sufficient to dispel any misunderstanding the name and description on the front of the package might cause is a question of fact. Plaintiff has pled a sufficiently plausible claim for deception to survive a motion to dismiss.

Pinnacle also asserts that Plaintiff has failed to plead actual damages, because he received the benefit of the bargain; that is, he was promised salad dressing containing extra virgin olive oil and that's what he received. Plaintiff responds that he paid a higher price than the product was actually worth because he (and the putative class members) believed the product contained more extra virgin olive oil (a "premium" ingredient) than it actually did.

The actual damage element of an ICFA claim requires that the plaintiff suffer "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *citing Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (2008). In the consumer context, a plaintiff may satisfy this element if the seller's deception deprives them of the benefit of his or her bargain by causing them to pay "more than the actual value of the property." *Id.* Here, Plaintiff has pled that the dressings were sold "at a premium price, 25% more on average, over similar salad dressings on store shelves because the represented ingredient…is a premium oil[,]" and that the use of water and other oil made it worth less than the "premium paid" by consumers. (Doc. 2-1 at ¶ 13). These allegations are sufficient to assert that Plaintiff paid more than the product was worth due to the alleged deceptive practice, and therefore was deprived the benefit of the bargain. *See Muir*

*v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (plaintiff may plead actual damages by alleging that he was deprived of the benefit of the bargain because the product was worth less than it would have been worth but for the deception).  As such, Plaintiff's damage allegations as to his ICFA claim survive 12(b)(6) dismissal.

### *Missouri Merchandising Practice Act*

The MMPA prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose…in or from the state of Missouri[.]"  Mo. Rev. Stat. § 407.020.1.  The statute defines "trade" or "commerce" as "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated.  The terms "trade" and "commerce" include any trade or commerce directly or indirectly affecting the people of this state."  Mo. Rev. Stat. § 407.010.7.  The Supreme Court of Missouri describes the MMPA's language regarding unlawful merchandising as "unrestricted, all-encompassing and exceedingly broad."  *Ports Petroleum Co. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001).

Pinnacle argues that because Plaintiff purchased the product in Illinois, there are "no ties between the allegedly fraudulent transactions and Missouri."  *Perras v. H&R Block*, 789 F.3d 914, 918 (8th Cir. 2015).  Plaintiff contends that there are ties to Missouri because Pinnacle marketed the products with the same allegedly deceptive labeling in Missouri, and because he is a Missouri resident who purchased the product for use in Missouri.

Interpreting the MMPA as broadly as it has been recognized by the Missouri Supreme Court, Plaintiff has adequately alleged grounds for application of the statute. Specifically, Plaintiff alleges that Pinnacle sells the products at issue in Missouri, and that any deception or misrepresentation in the name or on the bottle would take place "in connection with the sale or advertisement of any merchandise in trade or commerce…in or from the state of Missouri[.]" (Doc. 2-1 at ¶ 9). Additionally, at least one federal court has held that "conduct originating outside Missouri that affects Missouri consumers is actionable" under the MMPA. *Lopez v. Dlorah, Inc.*, No. 11-1101-CV-SJ-ODS, 2012 WL 4091975, at *5 (W.D. Mo. Sept. 17, 2012)

*Perras* involved a different factual scenario, and is thus distinguishable from this case. In *Perras*, the plaintiff was a California resident suing a tax preparation company headquartered in Missouri for charging a "compliance fee" greater than the cost of actually complying with new regulations. 789 F.3d at 915. Significantly, the case was a proposed class action, where the putative class was defined as persons in all states *except* Missouri who had purchased tax preparation services in given years and paid the offending fee. The Eighth Circuit examined whether the claims fell within the scope of the MMPA when none of the putative class members were Missouri residents, all of the complained-of transactions (paying the compliance fee) occurred outside Missouri, and the only conduct that allegedly took place in Missouri was the design and implementation of the compliance fee. The Court of Appeals specifically noted that the Missouri Supreme Court had not decided whether the language of the MMPA "is broad enough to cover transactions taking place outside of Missouri." *Id.* at 917. Ultimately, the Court concluded that because every part of the transactions took place between the putative class members and the local branches (i.e. wholly outside the state of Missouri), "the acts of

commerce that Perras grieves did not occur in, or originate from, the State of Missouri" as required to fall under the MMPA. *Id.* at 918.

Here, there are acts of commerce alleged in the Complaint that link the purported misrepresentations to trade and commerce in Missouri. Therefore, the Complaint adequately alleges an MMPA claim on this ground.[1]

### *Rule 9(b)*

Pinnacle also argues that the Complaint does not meet the heightened pleading standard for allegations of fraud under *F.R.C.P.* 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The heightened pleading requirement applies to "averments of fraud," not claims of fraud, so whether the rule applies depends on the plaintiffs' factual allegations. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Consumer actions alleging misrepresentation and deceptive practices, including those brought under the ICFA, are subject to the heightened pleading standard. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

"A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements." *Id*. The precise level of particularity required under Rule 9(b) depends upon the facts of the case. However, in the context of consumer fraud statutory claims, a plaintiff must generally state the identity of the person making the representation, the time, the place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. *Id.* (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992))

---

[1] In a footnote, Pinnacle also claims that the MMPA claims are pre-empted or fail for the same reasons alleged for the ICFA claim. These arguments are denied for the reasons outlined above.

Pinnacle alleges that Plaintiff has failed to identify which of the five flavors in the E.V.O.O. line he bought, the date (presumably the specific date) that he purchased the product, and which store he bought it from. Pinnacle also argues that Plaintiff is required to plead when and where he read the allegedly deceptive representations, and how he was deceived before buying the product.

Although the pleading standard is higher for fraud claims, it does not require as much detail as Pinnacle suggests. Plaintiff has pled who (Pinnacle) did what (made deceptive statements regarding the extra virgin olive oil content of the E.V.O.O. line of products) and specified what the allegedly deceptive statements were. He has also adequately specified the method by which those alleged misrepresentations (product name and statements on the bottle) were communicated— via the bottle of the products themselves. He has identified the store and area where he purchased the product and a reasonably definite timeframe. Requiring the specific flavor, the specific date and the specific store address, as well as a detailed description of Plaintiff's specific mental processes is a bridge too far at the pleading stage, even under the Rule 9(b)'s heightened standard.

*Unjust Enrichment*

Finally, Pinnacle argues that Plaintiff's unjust enrichment claim fails because it cannot stand in the absence of the ICFA (or presumably MMPA) claim. Because those claims survive dismissal, this argument fails as well. Accordingly, Pinnacle's Motion to Dismiss (Doc. 11) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

**DATED: March 27, 2018**

                                              **s/ Staci M. Yandle**
                                              **STACI M. YANDLE**
                                              **United States District Judge**