## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON KORTE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PINNACLE FOODS GROUP LLC,<br><br>Defendant. | No. 3:17-cv-00199-SMY-SCW<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION MEMORANDUM IN SUPPORT** |

Plaintiff Aaron Korte ("Plaintiff"), by his undersigned counsel, respectfully submits the following Motion for Class Certification AND Memorandum in Support pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

This deceptively mislabeled food case is eminently well suited for class certification under Rule 23 and is no different from a number of other recent food cases that have been certified as class actions. *See, e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-00564-NC, 2018 WL 3126385 (N.D. Cal. June 26, 2018) (certifying class where amount of ginger in food product was misrepresented); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) (reversing denial of class certification in case where amount of high quality microground Arabica coffee in food product was misrepresented).

Indeed, the 7th Circuit decision of *Suchanek* in which a class of consumers ultimately was certified is particularly significant here. It dealt with standardized packaging for a food product (coffee) in which the quantity of a high quality ingredient – microground Arabica coffee – was alleged to be mispresented. That is the exact same scenario as in this case, which deals with standardized packaging for a food product (Wishbone E.V.O.O.), in which the quantity of a high

quality ingredient – extra virgin olive oil – is alleged to be misrepresented. Following the law and facts of *Suchanek*, class certification is warranted here. *Suchanek*, 764 F.3d at 750; *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239 (S.D. Ill. Nov. 3, 2015) (certifying class on remand).

Indeed, it is uncontested by defendant Pinnacle Foods Group LLC ("Defendant" or "Pinnacle") that each and every label of the Products[1] uniformly stated in prominent letters on the front of the packaging "E.V.O.O.", which stands for "extra virgin olive oil."  Exhibit J.  It is also uncontested that discovery in this matter has revealed that the Products are mainly comprised of municipal tap water and cheap soybean oil, and not extra virgin olive oil.

Defendant made a tremendous profit from its deception, charging consumer millions of dollars for the Products that instead of extra virgin olive oil, were mainly tap water and cheap soybean oil. Furthermore, Defendant's misconduct is ongoing. It continues to deceptively prominently label its Products as "E.V.O.O." Defendant's standardized, ongoing conduct and the common issues of fact and law this case raises make for a paradigm example of a case where class certification is appropriate under Rules 23(a), (b)(2), and (b)(3).

All requirements of Rule 23(a) are met. The Class is so numerous that joinder is impractical, as tens of thousands of persons bought the Products during the Class Period. There are multiple common questions of law and fact that will drive resolution of this action, including whether Defendant engaged in the uniform, standardized course of conduct at issue and whether Defendant's conduct constitutes an unfair or deceptive business practice. Plaintiff is typical of the Class members because Plaintiff and the Class members all bring claims based on the same practice by Defendant and seek the same monetary and injunctive relief. Plaintiff is an adequate

---

[1] The products at issue are all flavors of "Wish-Bone" branded salad dressing that Defendant labeled as "E.V.O.O." and as "Made With Extra Virgin Olive Oil" (the "Products"). *See* Compl. ¶ 1 n.1, ECF No. 2-1.

class representative because he has no conflicts of interest with the Class members and he is committed to pursuing this action. He has sat for his deposition and responded to other discovery. Plaintiff's counsel are also adequate, as they are experienced class action attorneys with sufficient resources to vigorously prosecute the case.

Certification under Rule 23(b)(2) is also proper, as Defendant's actions apply generally to the Class so that injunctive and declaratory relief is appropriate with respect to the Class as a whole.

Certification under Rule 23(b)(3) is also warranted, as the predominance and superiority requirements are met. Predominance is met because Class-wide resolution of the common questions of fact and law that are central to the action will substantially advance the case, and the common issues are qualitatively more important than any potential individualized issues. In support of predominance, Plaintiff also submits the expert report of Dr. Jean–Pierre Dubé, a University of Chicago economist who has proposed a common methodology for the measurement of damages that has been widely accepted by courts in certifying class actions. Plaintiff will use common evidence to prove that Defendant has engaged in the standardized course of conduct at issue, as well as causation and damages. The superiority requirement is met because a single class action is preferable to a large number of individual claims for relatively small amounts of damages.

For all of the reasons set forth herein, the Court should certify the Class of Illinois and Missouri consumers (as defined below) under Rule 23(a), (b)(2), and (b)(3); appoint Plaintiff as Class representative; appoint Reese LLP , The Kreisler Law Firm, LLC, and Donovan Rose Nester, P.C., as Class Counsel; and award any further relief that the Court deems proper.

## THE COMMON FACTS UNDERLYING PLAINTIFF'S CLAIMS

### A.    Allegations

This case involves a line of salad dressings sold by Pinnacle under the label "Wish-Bone®

E.V.O.O. Dressing- Made With Extra Virgin Olive Oil". Plaintiff alleges Pinnacle's naming and

marketing of the Products in question is deceptive because instead of extra virgin olive oil

(sometimes abbreviated "E.V.O.O." or "EVOO") being the predominant ingredient of the

Products, they are "comprised mainly of water and cheap soybean oil, and not premium E.V.O.O."

¶ 16.[2] Plaintiff further alleges Pinnacle charges 25% more, on average, for the Products than

similar salad dressings on the basis that it is made with extra virgin olive oil. ¶ 13. Plaintiff alleges

the Product labels violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 810

ILCS § 505/1 *et seq.* ("IFCA") (Count I) (¶¶ 26-35), the Missouri Merchandising Practices Act, §

407.010 R.S. Mo. *et seq.* ("MMPA") (Count II) (¶¶ 36-45), and the law of unjust enrichment

(Count III) (¶¶ 46-52). All three of these claims survived a motion to dismiss. Order Denying

Motion to Dismiss, Mar. 27, 2018, ECF No. 37.

### B.    Class Certification Discovery and Common Proof

The Parties have exchanged numerous discovery requests, including document requests

and interrogatories, as well as conducted depositions of the opposing side. This discovery has

demonstrated that the allegations stated above are subject to common proof that has been

developed in discovery.

On February 7, 2018, the defendant took the deposition of Aaron Korte. Mr. Korte testified

to the following:

1.    In the fall of 2016, he purchased the Wish-Bone E.V.O.O. Product from a
      Schnuck's Market in Belleville, Illinois. *See* Declaration of Sean Cronin in Support

---

[2] All "¶_" are references to the Class Action Complaint filed on January 3, 2017. ECF No. 2-1.

of Class Certification ("Cronin Decl."), Ex. A (deposition of Aaron Korte) at 70:11-13, 70:22-25, 71:1.

2.      When he purchased the Wish-Bone E.V.O.O. Product he believed, based on the Product packaging, that it just was extra virgin olive oil and seasonings. Cronin Decl., Ex. A at 43: 16-19. He understands olive oil dressings may also have vinegar. *Id.* at 60:11-14. However, he would not expect an olive oil dressing to contain a blend of oils. *Id.* at 61 3-6 ("If it was an olive oil dressing, I would expect it to be olive oil as the only oil.").

3.      Mr. Korte purchased the Wish-Bone E.V.O.O. Cesar Vinaigrette dressing after visiting the salad dressing aisle at the Schnuck's Market. He recalls seeing "E.V.O.O. real big on it (the label). And then 'Made with Olive Oil.'" *Id.* at 88:13-16. After scanning the labels in the aisle he settled on the Wish-Bone Product because "I know I like olive oil, and it said 'E.V.O.O., made with olive oil' on it, and I thought, oh, that looks good." *Id.* 76:17-25; 77:1-6.

4.      Mr. Korte understands that this case is a class action lawsuit and that he is representing "multiple consumers upset for the same reasons I am, and I'm representing all of them against Pinnacle." *Id.* at 122:4-8.

On May 23, 2018, Plaintiff took the deposition of Rule 30(b)(6) deponent Stephen Gunther produced by Pinnacle. Mr. Gunther testified to the following:

1.      The E.V.O.O. line of Products was designed by Pinnacle to attract health conscious consumers who believed extra virgin olive oil to be a healthier ingredient. Cronin Decl., Ex. B (Rule 30(b)(6) deposition of Defendant Pinnacle) at 108:15-109:4.

2.      The E.V.O.O. Products contain ▮▮▮▮ the amount of water than extra virgin olive oil. In fact, the E.V.O.O. line of dressings are composed of ▮▮% municipal water from St. Elmo, Illinois (Cronin Decl., Ex. B. at 44:2-7) followed by a blend of oils that is part extra virgin olive oil (▮▮%) and part soybean oil (▮▮%). *Id.* at 50:4-20; 69:21-25. The extra virgin olive oil constitutes only ▮▮% of the Product. *Id.* at 50:4-20; 69:21-25. These percentages are the same for each flavor in the E.V.O.O. Product line. *Id.* at 48:24-49:3.

3.      Soybean oil is not a premium oil. *Id.* at 43:20-22. Olive oil costs six times more than soybean oil. *Id.* at 92:1-13.

4.      Pinnacle positioned the E.V.O.O. Product as a premium salad dressing, which included prominently stating "E.V.O.O." on the front of each bottle to attract consumers looking for "better-for-you" ingredients. *Id.* at 107:7-25, 108:1-7. Pinnacle believed, based on market research, that consumers would pay a premium price for the E.V.O.O. dressing. *Id.* at 109:23-110:2.

5.   Consumers, according to Pinnacle's Product research, do not see a difference between "100% extra virgin olive oil" and "made with extra virgin olive oil." *Id.* at 68:13-17:

> *In our concept testing we actually tested "100 percent E.V.O.O."*
> *and "Made with E.V.O.O.," and what we found out consumers*
> *really didn't see much between the two of those labels.*

## C.   Plaintiff's Experts

### 1.   Paul Miller, Agricultural Scientist

Plaintiff produced the expert report of Agricultural Scientist Paul Miller in conformance with expert disclosure deadlines on June 15, 2018. A copy of Mr. Miller's expert report is attached to the Cronin Declaration as Exhibit E thereto and referred to herein as the "Miller Expert Report."

It is Paul Miller's professional opinion that consumers would expect the challenged Products at issue here to consist primarily of extra virgin olive oil, some vinegar, and flavoring, such as sundried tomatoes (for the Sundried Tomato flavored challenged Product) or garlic and basil (for the Garlic and Basil Italian challenged Product). Consumers would not expect the challenged Products to contain tap water or soybean oil. It is also his opinion that consumers place a much higher value on extra virgin olive oil and do not view soybean oil, or water, as comparable to extra virgin olive oil. Miller Expert Report at page 1, ¶ 3.

### 2.   Plaintiff's Expert Dr. Jean–Pierre H. Dubé, The University of Chicago

Plaintiff produced the expert report of Dr. Jean–Pierre H. Dubé in conformance with expert disclosure deadlines on June 15, 2018. A copy of Dr. Dubé expert report is attached to the Cronin Declaration as Exhibit D and referred to herein as the "Dubé Expert Report."

Dr. Dubé states in his report that a method exists to determine economic damages in this case on a classwide basis. It is Dr. Dubé's expert opinion that it is possible to determine classwide economic damages in this case using conjoint analysis. Dubé Expert Report at 1.

## THE PROPOSED CLASS

Plaintiff seeks certification of the following Class:

> All persons who purchased the Products in the state of Illinois or Missouri during the period of February 4, 2016, to present (the "Class").

> Excluded from the Class are: (a) Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes itself from the Class in accordance with Court-approved procedures.

## ARGUMENT

## I.   LEGAL STANDARD

"To be certified as a class action, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and one of the three alternative requirements in Rule 23(b)." *Zeidel v. A&M (2015) LLC*, No. 13-CV-6989, 2017 WL 1178150, at *2 (N.D. Ill. Mar. 30, 2017) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). Plaintiff bears the burden of showing that a proposed class satisfies Rule 23, but it "need not make that showing to a degree of absolute certainty." *Messner*, 669 F.3d at 811. "It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Id.*

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. "[T]he fact that class certification decisions must be supported by evidence does not mean that certification is possible only for a party who can demonstrate that it will win on the merits." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 931 (7th Cir. 2016).

## II.   THE COURT SHOULD CERTIFY THE PROPOSED CLASS

As set forth below, the Class easily satisfies all four prerequisites of Rule 23(a) and all requirements of Rule 23(b)(2) and (b)(3).

### A.   The Class Satisfies Federal Rule of Civil Procedure 23(a)

"All class actions, no matter what type, must meet the four explicit requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015).

#### 1.   Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. General principles have been employed in making this determination. "Impracticality does not mean impossibility; plaintiffs need only prove it would be inconvenient and difficult to join the proposed class members." *Duffin v. Exelon Corp.*, No. 00-162-GPM, 2007 WL 845336, at *4 (N.D. Ill. Mar. 19, 2007). More than 40 individuals raises a presumption that joinder is impracticable. *Swanson v. American Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *Carrier v. JPB Enters., Inc.*, 206 F.R.D. 332, 334 (D. Me. 2002). A court is entitled to make common sense assumptions, based upon some evidence or reasonable estimates of the number of class members in order to find support for numerosity. *Westefer v. Snyder*, No. CIV. 00-162-GPM, 2006 WL 2639972, at *3 (S.D. Ill. Sept. 12, 2006).

In its Answer to Plaintiff's Interrogatory No. 21, Defendant conceded that the numerosity

requirement for Rule 23 is satisfied by the Illinois Class.

> **INTERROGATORY NO. 21.** State the total units of the Products sold in the United States, broken down by month, for each month in the Applicable Time Period.

> **ANSWER:** Subject to and without waiving the objections raised in Pinnacle's Objections to Plaintiff's First Set of Interrogatories, Pinnacle concedes the numerosity requirement for Rule 23 is satisfied by the Illinois class. Accordingly, the total number of units sold in Illinois is not relevant to certification of the class.

*See* Answers to Plaintiff's Interrogatories, attached hereto as Exhibit C to the Cronin Declaration.

It is unclear why Defendant did not answer Interrogatory 21 or address the numerosity requirement with regard to the Missouri Class. However, in its Notice of Removal, in support of its representation to the Court that the amount in controversy in this matter exceeds five million dollars, Defendant estimated that total Missouri sales for the class period will be $273,000. ECF No. 2. Given Defendant's representation that the Product sold for approximately $▮▮▮ wholesale, a simple calculation indicates the estimated number of Missouri sales for the Class period is approximately 176,129. Cronin Decl., Ex. B. at 65:6-8. Missouri sales are therefore comparable to the Illinois sales, which Defendant concedes satisfy the numerosity requirement.

The Class members who made these approximately 176,129 purchases amply satisfy the numerosity requirement, because a class of as few as 40 has been found to be sufficient, and the number of Class members here must be substantially higher than 40. *Swanson*, 415 F.2d at 1333; *Murray v. GMAC Mortgage Corp.*, 483 F. Supp. 2d 636 (N.D. Ill. 2007) (same); *Lively v. Dynegy, Inc.*, No. 05-cv-63-MJR, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) (same); *Hendricks-Robinson v. Excel Corp.*, 164 F.R.D. 667, 671 (C.D. Ill. 1996) (38 class members suffices); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (class of 29 members certified).

Accordingly, the class is so numerous that joinder of all members is impracticable.

### 2.  **Commonality**

Pursuant to Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This element is a "low hurdle [that is] easily surmounted." *Lively*, 2007 WL 685861, at *7 (internal quotations omitted, brackets in original). "The fact that there is some factual variation among the class grievances will not defeat a class action. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992) (affirming class certification). Class certification will not be defeated by the presence of some factual variations among the claims of class members. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). When a question of law refers to standardized conduct by defendants toward members of the class, a common nucleus of operative facts is typically presented, and the commonality is usually met. *Suchanek*, 764 F.3d at 756.

Applying the standard to the case at bar, there is undeniably commonality both factually and legally. As explained by the 7th Circuit: "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek*, 764 F.3d at 756. At issue here is a standardized food label that uniformly stated in prominent letters on each and every product "E.V.O.O." and "Made with Extra Virgin Olive Oil." Plaintiff alleges these two representations, on their own and in conjunction, are misleading to a reasonable consumer because the predominant ingredient is not extra virgin olive oil, but rather tap water and soybean oil. The plaintiff's claim and those of the Class all derive from a single course of conduct by Defendant: the marketing and packaging of the Product. The same legal standards govern every class member's claim. "All of the applicable state consumer protection laws require proof that a statement is either (1) literally false, or (2) likely to mislead

(either through a statement or material omission) a reasonable consumer." *Suchanek*, 764 F.3d at 756-57. The following common questions are presented by the claims:

- whether the Product packaging was likely to mislead a reasonable consumer;

- whether Defendant intended that Plaintiff rely on the deception; and

- whether the deception caused damage.

For these reasons, the element of commonality is present.

### 3. **Typicality**

The typicality requirement under Rule 23(a)(3) "is closely related . . . [to] commonality." *Rosario*, 963 F.2d at 1018. The 7th Circuit has "stated that a 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *Id.* Typicality is focused on the characteristics of the named plaintiff relative to the class. *Duffin*, 2007 WL 845336, at *6. "The test for typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Lively*, 2007 WL 685861, at *9. Factual inconsistencies between the class are not enough to defeat typicality. *Rosario*, 963 F.2d at 1018.

As applied, Plaintiff and all other Class members were exposed to the exact same course of conduct by Defendant: the marketing and packaging of the Product. *See Suchanek*, 311 F.R.D. at 255; *see also In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014) ("In a suit alleging a defect common to all instances of a consumer product . . . the conduct does not differ."). All of the Product labels contained the exact same relevant representations. "Variations among the named representatives in their perception of the packaging or their motivation for ultimately purchasing the Product simply means their claims are not

completely *identical*, it does not mean their claims are *atypical* of the class. *Suchanek*, 311 F.R.D. at 255–56; *see also In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d at 601 (reversing because district court mistakenly held class could not be certified because different plaintiffs had different experiences with sub-standard roofing tiles); *Butler v. Sears, Roebuck, and Co.*, 727 F.3d 796, 798, 800 (7th Cir. 2013) (affirming certification of single class of consumers who purchased washing machines that accumulated mold even though class members did not all own same exact model and "different models [were] differently defective."); *Pella Corp. v. Saltzman*, 606 F.3d 391, 392 (7th Cir. 2010) (affirming certification of class of consumers who purchased windows with a design defect even though consumers' experiences with defective windows may have been caused by many individual variances such as specific conditions and improper installation). Accordingly, typicality is satisfied.

### 4. <u>Adequacy</u>

Rule 23(a)(4) requires the representative party to "fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). To accomplish this, "the class representative must 'possess the same interest and suffer the same injury as the class members.'" *Lively*, 2007 WL 685861, at *11 (quoting *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002)). The adequacy requirement is satisfied when the named representative has "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and "[does] not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010). Plaintiff has suffered the same injury as the absent Class members, i.e., he was deceived by the Product labeling, and he has the same type of interest as the absent Class members. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status" *Wilfong v. Rent-A-Ctr., Inc.*, No. 00-CV-680-DRH,

2001 WL 1795093, at *7 (S.D. Ill. Dec. 27, 2001). As the court stated in *Suchanek* in finding that the class representative in a similar food labeling class action was adequate:

> The Court fails to see how or why it makes a difference whether some of the named Plaintiffs were misled solely by affirmative misrepresentations in statements, images, and descriptions set forth on the packaging as opposed to a material omission or some combination of affirmative misrepresentations and omissions. They all have the same interest in proving the . . . packaging was unfair or deceptive because all of their claims stand or fall on the issue of whether a reasonable consumer was likely to be misled by the overall packaging, not any one particular attribute or omission. Additionally, they all suffered the same injury—they paid an inflated price . . . or paid for a product they would not have bought at all had they known it was instant coffee.

*Id.* at 257.

Rule 23(g) governs the adequacy of class counsel. Under Rule 23(g), the court, in selecting class counsel, must consider the work counsel has done in investigating potential claims in the action, "counsel's experience in handling complex class actions, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class." Fed R. Civ. P. 23(g)(1)(C)(i); *Lively*, 2007 WL 685861, at *17. Class counsel must fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(1))(C)(ii). In this action, the law firms of Reese LLP, Donovan Rose Nester, P.C., and the Kreisler Law Firm LLC should be appointed Co-Lead Counsel.  The proposed class counsel consists of attorneys with extensive experience in the successful prosecution of complex class actions across the nation. Resumes for Reese LLP and the Kreisler Law Firm LLC are attached as Exhibits F and K to the Cronin Declaration.

Further, proposed class counsel have undertaken significant effort to investigate and litigate the claims in this action including conducting substantially written discovery and depositions and retaining highly qualified expert witnesses. Proposed class counsel's substantial knowledge of the law is evidenced by, among other things, the result they achieved in response to Defendant's motion to dismiss.

**B.    The Requirements for Certification under Federal Rule of Civil Procedure 23(b)(2) Are Satisfied**

Plaintiff seeks class certification pursuant to Rule 23(b)(2), under which certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Court should certify the Class under Rule 23(b)(2) because Defendant's uniform mislabeling of its Products is an action of general applicability to all Class members.

Class members are likely to be damaged in the future by Defendant's unfair and deceptive practices unless the Court issues an injunction prohibiting Defendant from continuing to engage in this activity in the future.

**C.    The Class Satisfies Federal Rule of Civil Procedure 23(b)(3)'s Requirements**

Plaintiff also seeks certification pursuant to Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

**1.    <u>Common Questions of Law and Fact Predominate Over Individual Questions</u>**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Predominance is satisfied when 'common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication.'" *Kleen Prods. LLC*, 831 F.3d at 925; *accord Messner*, 669 F.3d at 815; *Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corp.*, No. 14-CV-596-SMY-SCW, 2016 WL 3402621, at *6 (S.D. Ill. June 21, 2016). "[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50, pp. 196-197 (5th ed. 2012)); *accord Messner*, 669 F.3d at 815.

"There is no mathematical or mechanical test for evaluating predominance." *Messner*, 669 F.3d at 814. Predominance is not "determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Butler*, 727 F.3d at 801. Rather, "predominance requires a qualitative assessment[.]" *Id.* In determining whether the predominance requirement is met, "[t]he court should evaluate the evidence pragmatically . . . [to] decide whether classwide resolution would substantially advance the case." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (quoting *Suchanek*, 764 F.3d at 761).

"A proposed class of plaintiffs must prove the *existence* of a common question, and one that predominates over individual questions, but it need not prove that the answer to that question will be resolved in its favor." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015). Nor does Rule 23(b)(3) impose a "heavy burden" of showing common answers to the common questions. *Butler*, 727 F.3d at 801 (quoting *Messner*, 669 F.3d at 819); *accord Amgen Inc.*, 133 S.

Ct. at 1195 ("[T]he focus of Rule 23(b)(3) is on the predominance of common *questions*[.]").

Furthermore, "Rule 23 does not demand that *every* issue be common; classes are routinely certified under Rule 23(b)(3) where common questions exist and predominate, even though other individual issues will remain after the class phase." *Kleen Prods. LLC*, 831 F.3d at 922. Indeed, "it is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Id.* at 925 (citing *Messner*, 669 F.3d at 815); *accord Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849 (7th Cir. 2017); *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) ("It has long been recognized that the need for individual damages determinations at [a] later stage of the litigation does not itself justify the denial of certification."); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ("'[T]he fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3).").

"Predominance analysis 'begins, of course, with the elements of the underlying cause of action.'" *Costello*, 810 F.3d at 1059 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)).

Here, as detailed below, common questions predominate as to all of Plaintiff's claims, each of which is for violation of consumer protection statutes. "Predominance is a test readily met in certain cases alleging consumer . . . fraud[.]" *Amchem Prods., Inc.*, 521 U.S. at 625. Critically, in the case of each claim, the manner in which the Class will show Defendant's liability will be based on the same evidence. The Class's claims will rise or fall in unison on the basis of the success or failure of that common evidence.

  **a. Common Issues Predominate as to Plaintiff's Claims for Violation of Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.***

  "The elements of a claim under the ICFA are: '(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Messina v. Green Tree Servicing, LLC*, No. 14 C 7099, 2016 WL 6089821, at *7 (N.D. Ill. Sept. 28, 2016) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)); *accord Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). "[R]eliance is not an element of statutory consumer fraud." *Connick*, 675 N.E.2d at 593.

  Here, common evidence will establish that Defendant engaged in deceptive or unfair acts or practices under the ICFA. Specifically, Plaintiff challenges Defendant's uniform, standardized, and deceptive labeling of its Products as "E.V.O.O." Plaintiff contends this is deceptive because, as the evidence developed in this action demonstrates, extra virgin olive oil (EVOO) is not the predominate ingredient (rather, tap water is), nor even is EVOO the only oil (rather, soybean oil is also included). Cronin Decl., Ex.B (Pinnacle 30(b)(6) Deposition Transcript) at 48:24-49:3, 50:4-20, 69:21-25. Whether or not this is deceptive is determined by a jury using an objective standard. This objective standard, without need for individualized proof, will determine whether Defendant's actions are unfair or likely to deceive reasonable consumers.

  Common evidence will show that Defendant intended for each Class member to rely on the deceptive label at issue. Indeed, Defendant's internal documents produced in this action emphasize the importance to consumers of extra virgin olive oil and that Defendant intended consumers to rely upon its EVOO Product label. Cronin Decl., Ex. G (PIN0002179-82); Ex. H (Wishbone EVOO New Trier & Aware Non-Trier Survey) (PIN00001611-28); Ex. I (Wishbone

EVOO, Unlocking New Trier's Insights) (PIN00002532-87).

Common evidence will also show Defendant's conduct at issue involves trade or commerce. The Class members are consumers who purchased the Products. Plaintiff will support the third element of his ICFA claim using common proof.

For all of the foregoing reasons, Plaintiff has established that common questions of law and fact predominate with respect to his ICFA claim. *See Suchanek*, 764 F.3d at 761; *In re Stericycle, Inc.*, No. 13 C 5795, 2017 WL 635142, at \*8 (N.D. Ill. Feb. 16, 2017).

The evidence cited above is enough to demonstrate that common questions predominate over individualize issues. Nonetheless, Plaintiff has gone even further than required and also submits an expert report from an olive oil expert – Paul Miller – that provides further evidence that Defendant's label is deceptive. *See* Exhibit E - Miller Expert Report. As Mr. Miller concluded:

> It is my opinion that consumers would expect the Challenged Products at issue here to consist primarily of extra virgin olive oil, some vinegar and flavoring, such as sundried tomatoes (for the Sundried Tomato flavored Challenged Product) or garlic and basil (for the Garlic and Basil Italian Challenged Product). Consumers would not expect the Challenged Products to contain tap water or soybean oil. It is also my opinion that consumers place a much higher value on extra virgin olive oil and do not view soybean oil, or water, as comparable to extra virgin olive oil.

Miller Expert Report at 1.

With respect to damages, the 7th Circuit has repeated cautioned that individualized damages questions should not preclude class certification. That said, an independent reason that predominance has been met in addition to the reasons stated above, is that Plaintiff's expert – Dr. Jean–Pierre H. Dubé from the University of Chicago – has proposed a common methodology to determine damages. *See Exhibit D* - Dubé Expert Report. As Dr. Dubé concluded:

> It is my opinion that it is possible to determine classwide economic damages in this case using Conjoint Analysis.

Dubé Expert Report at 2. Moreover, as stated above, numerous courts have accepted Dr. Dubé as

an expert and his proposed methodology in certifying classes in actions similar to that here. *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 (S.D.N.Y. 2016) (certifying class and holding that "Dr. Dube's methodology is sufficiently explained in the report . . . meaning the Court need only rely on the report, and find it reliable, for the limited proposition that a price premium attributable to the products can eventually be determined. The Court finds the report sufficiently reliable to inform it of that potential.").

> **b.   Common Issues Predominate as to Plaintiff's Claims for Violation of the Missouri Merchandising Practices Act, § 407.010 R.S. Mo. *et seq.***

Plaintiff will use the same common evidence to support his MMPA claim as described above with respect to his ICFA claim. Common questions of law and fact predominate with respect to Plaintiff's MMPA claim.

## 2.   The Class Action Mechanism Is Superior

Rule 23(b)(3)'s superiority requirement is satisfied if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the alternative mechanism to adjudicate the claims in this action would be individual claims for relatively small amounts of damages. "Parallel litigation for each class member would entail same discovery and require multiple courts to weigh the same factual and legal bases." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2016 WL 4992504, at *10 (S.D. Ill. Sept. 16, 2016). Not only would this burden the court system, which would be deciding the same legal issues in numerous small cases, it would not make economic sense for litigants or lawyers. It is likely that in most, if not all, individual cases, litigation costs would dwarf potential recovery. Because "the only alternative would be separate individual actions, a class action is the superior method of adjudication." *Cook v. Applebee's Servs., Inc.*, No. 13-CV-1289-SMY-SCW, 2015 WL 5675797,

at *3 (S.D. Ill. Sept. 28, 2015). Furthermore, "the relevant facts and circumstances do not suggest that a class action would be difficult to manage in this instance." *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order:

(1)     appointing Plaintiff as representative for the members of the Class;

(2)     appointing Donovan Rose Nester, P.C., Reese LLP, and The Kreisler Law Firm LLC as Co-Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(g);

(3)     certifying the Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3); and

(4)     for all other relief this Court deems just and proper.

Date: September 21, 2018                              Respectfully submitted

By: */s/ Sean K. Cronin_____*
**DONOVAN ROSE NESTER, P.C.**
Sean K. Cronin
*Scronin@drnpc.com*
201 South Illinois Street
Belleville, Illinois 62220
(618) 212 – 6500

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Brian T. Kreisler
*brian@kreislerlawfirm.com*
**THE KREISLER LAW FIRM LLC**
Post Office Box 1353
O'Fallon, Illinois  62269
Telephone: (618) 589-2165
Facsimile: (618) 632-5095

*Proposed Co-Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2018, I caused a true and correct copy of the foregoing document to be filed electronically using the Court's CM/ECF system, which will serve notice upon all counsel of record.


By: _/s/ Sean K. Cronin_
Sean K. Cronin