UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON KORTE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>PINNACLE FOODS GROUP LLC,<br><br>                    Defendant. | No. 3:17-cv-00199-SMY-SCW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**REDACTED** |

Plaintiff Aaron Korte ("Plaintiff") respectfully submits the following in opposition to the motion for summary judgment (ECF No. 41) ("Motion" or "Def. Mtn.") filed by defendant Pinnacle Foods Group LLC ("Defendant" or "Pinnacle"). As explained below, Defendant's Motion must be denied.

**INTRODUCTION**

Defendant's Motion for Summary Judgment is, at best, premature. The Parties agreed, and this Court so ordered, that discovery would only proceed on class certification issues and that merits discovery would not take place until after a ruling on Plaintiff's Motion for Class Certification. *See* Order dated March 27, 2018 (Dkt. 36). Defendant has taken full advantage of the limitations on discovery, and has objected and otherwise refused to produce discovery on merits related issue. For example, in response to Plaintiff's Notice of Rule 30(b)(6) Deposition of Pinnacle, Inc., Defendant objected and limited discovery as follows:

> Pinnacle object to the Notice to the extent it seeks information that is irrelevant to the Court's determination of whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See* L.R. 23.1(a) (giving "priority" to class certification discovery, and anticipating that pure merits discovery would proceed in a second phase pursuant to a second scheduling order to be entered after class certification).

1

See Declaration of Michael R. Reese in Support of Opposition to Motion for Summary Judgment ("Reese Decl.") at Ex. A (Defendant's Objections to 30(b)(6) Notice). Indeed, as discussed below in detail, Defendant has limited all of its discovery responses – document production, interrogatories responses, and Rule 30(b)(6) deposition topics – in the same manner, refusing to produce discovery on merits-related issues.

Nonetheless, Defendant now moves for summary judgment on merits issues which have not been the subject of full discovery and on which Defendant has refused to produce discovery. Accordingly, Defendant's motion for summary judgment must be denied without consideration on the merits.

Alternatively, if this Court were to examine Defendant's motion for summary judgment on the merits, it must be denied as Defendant has failed to carry its burden under Federal Civil Procedure Rule 56. It is anticipated that discovery on Defendant's arguments, to the extent that they are relevant, would show that Defendant's arguments are wrong, and must be denied. Moreover, the limited evidence developed to date shows that Defendant is just wrong on the facts, or that there are genuine issues of fact. Accordingly, Defendant's motion for summary judgment must be denied for this reason as well.

I.  **STATEMENT OF FACTS, PROCEDURAL HISTORY AND EVIDENCE BASED ON LIMITED DISCOVERY DEVELOPED TO DATE**

A. **Allegations of the Complaint**

This case involves a line of salad dressings sold by Pinnacle under the label "Wish-Bone® E.V.O.O. Dressing- Made With Extra Virgin Olive Oil". Plaintiff alleges Pinnacle's naming and marketing of the Products in question is deceptive because instead of extra virgin olive oil (sometimes abbreviated "E.V.O.O." or "EVOO") being the predominant ingredient of the Products, they are "comprised mainly of water and cheap soybean oil, and not premium E.V.O.O." ¶ 16.[1] Plaintiff further alleges Pinnacle charges 25% more, on average, for the Products than similar salad dressings on the basis that it is made with extra virgin olive oil. ¶ 13. Plaintiff alleges the Product labels violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 810 ILCS § 505/1 *et seq.* ("IFCA") (Count I) (¶¶ 26-35), the Missouri Merchandising Practices Act, § 407.010 R.S. Mo. *et seq.* ("MMPA") (Count II) (¶¶ 36-45), and the law of unjust enrichment (Count III) (¶¶ 46-52). All three of these claims survived a motion to dismiss. Order Denying Motion to Dismiss, Mar. 27, 2018, ECF No. 37.

B. **Court Ordered Bifurcation of Discovery and Defendant's Objections and Limitations to Discovery**

Pursuant to Local Rule 23.1, the Parties agreed to bifurcate discovery, with discovery only proceeding on class certification issues, and merits discovery being deferred until after the Court had ruled on the motion for class certification now pending before the Court. On March 27, 2018, the Court so ordered the Parties' agreement on bifurcated discovery, limiting discovery to class certification issues and deferring merits discovery until a point after a ruling had been issued on the motion for class certification. *See* Order dated March 27, 2018 (Dkt. 36).

---

[1] All "¶_" are references to the Class Action Complaint filed on January 3, 2017. ECF No. 2-1.

3

Based on the bifurcation of discovery, Defendant has repeatedly objected to and refused to produce any discovery on non-class issues. Including among these topics are the two subject matters that Defendant now moves for summary judgment – pricing and consumer expectation. Citing bifurcation, Defendant has objected to and refused to produce discovery on pricing and consumers interpretation of the labeling of its products.

For example, in response to Plaintiff's Notice of deposition of Pinnacle pursuant to Federal Civil Procedure Rule 30(b)(6), Defendant made the following general objection:

> Pinnacle object to the Notice to the extent it seeks information that is irrelevant to the Court's determination of whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See* L.R. 23.1(a) (giving "priority" to class certification discovery, and anticipating that pure merits discovery would proceed in a second phase pursuant to a second scheduling order to be entered after class certification).

Reese Decl. Ex. A. Defendant also made the following specific objections in response to the deposition notice:

> **TOPIC NO. 15:** The willingness or unwilling of consumers to pay a price premium for salad dressing products (generally) that are labeled as "E.V.O.O.", "Made With Extra Virgin Olive Oil," and/or any other variant of the term "extra virgin olive oil."
>
> **RESPONSE:** In addition to the General Objections, Pinnacle objects to this topic as overly broad, unduly burdensome, and seeking information neither relevant to any claim or defense in this action nor proportional to the needs of the case. ***Pinnacle further objects to this topic on the basis that it seeks information that is irrelevant to the Court's determination of whether this action may proceed on a classwide basis.***
>
> **TOPIC NO. 16:** Any research, studies, surveys, testing, market analysis, or polls concerning salad dressing products (generally) labeled "E.V.O.O.", "Made With Extra Virgin Olive Oil," and/or any other variant of the term "extra virgin olive oil."
>
> **RESPONSE:** In addition to the General Objections, Pinnacle objects to this topic as overly broad, unduly burdensome, and seeking information neither relevant to

any claim or defense in this action nor proportional to the needs of the case....*Pinnacle further objects to this topic on the basis that it seeks information that is irrelevant to the Court's determination of whether this action may proceed on a classwide basis.*

**TOPIC NO. 18:** Consumer expectations or opinion concerning the use of extra virgin olive oil in any salad dressing product.

**RESPONSE:** In addition to the General Objections, Pinnacle objects to this topic as overly broad, unduly burdensome, and seeking information neither relevant to any claim or defense in this action nor proportional to the needs of the case. *Pinnacle further objects to this topic on the basis that it seeks information that is irrelevant to the Court's determination of whether this action may proceed on a classwide basis.*

**TOPIC NO. 19:** Consumer expectations or opinion concerning the use of soybean oil, peanut oil, or sunflower oil in any salad dressing product.

**RESPONSE:** In addition to the General Objections, Pinnacle objects to this topic as overly broad, unduly burdensome, and seeking information neither relevant to any claim or defense in this action nor proportional to the needs of the case. *Pinnacle further objects to this topic on the basis that it seeks information that is irrelevant to the Court's determination of whether this action may proceed on a classwide basis.*

**TOPIC NO. 21**: Any studies or research showing that the use of soybean oil, peanut oil, and/or sunflower oil in a salad dressing product (generally) is consistent with the use of the representations "E.V.O.O.," "Made With Extra Virgin Olive Oil," and/or any other variant of the term "extra virgin olive oil" on the salad dressing's label or in its Marketing Materials.

**RESPONSE:** In addition to the General Objections, Pinnacle objects to this topic as overly broad, unduly burdensome, and seeking information neither relevant to any claim or defense in this action nor proportional to the needs of the case. *Pinnacle further objects to this topic on the basis that it seeks information that is irrelevant to the Court's determination of whether this action may proceed on a classwide basis.*

Reese Decl. Ex. A.

Defendant made similar objections to Plaintiff's First Set of Requests for the Production of Documents and First Set of Interrogatories. Specifically, Defendant objected to Plaintiff's First Set of Document Requests and limited discovery as follows:

5

> Class Discovery. Pinnacle objects to each request seeking documents that are unnecessary to the Court's determination of whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. Pinnacle will respond further to these requests…following the Court's ruling on class certification.

Reese Decl. Ex. B (Defendant's Objections and Responses to Plaintiff's First Set of Requests for the Production of Documents).

And with respect to Plaintiff's First Set of Interrogatories, Defendant objected and limited its responses as follows:

> Some of Plaintiff's interrogatories are objectionable, among other reasons, because they seek information unnecessary to the Court's determination of whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, which is the focus of discovery at this stage of the case.

Reese Decl. Ex. C (Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories).

Defendant has also refused to produce for deposition the two declarants it relies upon in its Motion for Summary Judgment. Reese Decl. Ex. D (correspondence from Doug Maddox refusing to produce Defendant's summary judgment declarants for deposition).

**C.    The Limited Discovery to Date**

On February 7, 2018, Defendant took the deposition of Aaron Korte. Mr. Korte testified as follows:

1. In the fall of 2016, he purchased the Wish-Bone E.V.O.O. Product from a Schnuck's Market in Belleville, Illinois. *See* Declaration of Sean Cronin in Support of Class Certification ("Cronin Class Cert. Decl."), Ex. A (deposition of Aaron Korte) at 70:11-13, 70:22-25, 71:1.

2. When he purchased the Wish-Bone E.V.O.O. Product he believed, based on the Product packaging, that it just was extra virgin olive oil and seasonings. Cronin Class Cert. Decl., Ex. A at 43: 16-19. He understands olive oil

6

        dressings may also have vinegar. *Id.* at 60:11-14. However, he would not expect an olive oil dressing to contain a blend of oils. *Id.* at 61 3-6 ("If it was an olive oil dressing, I would expect it to be olive oil as the only oil.").

3. Mr. Korte purchased the Wish-Bone E.V.O.O. Cesar Vinaigrette dressing after visiting the salad dressing aisle at the Schnuck's Market. He recalls seeing "E.V.O.O. real big on it (the label). And then 'Made with Olive Oil.'" *Id.* at 88:13-16. After scanning the labels in the aisle he settled on the Wish-Bone Product because "I know I like olive oil, and it said 'E.V.O.O., made with olive oil' on it, and I thought, oh, that looks good." *Id.* 76:17-25; 77:1-6.

On May 23, 2018, Plaintiff took a Rule 30(b)(6) deposition of Defendant. Pursuant to its objections detailed above, Defendant produced Mr. Stephen Gunther, a senior vice president of research and development at Pinnacle, to testify. Mr. Guther testified as follows:

1. The E.V.O.O. line of Products was designed by Pinnacle to attract health conscious consumers who believed extra virgin olive oil to be a healthier ingredient. Cronin Class Cert. Decl., Ex. B (Rule 30(b)(6) deposition of Defendant Pinnacle) at 108:15-109:4.

2. The E.V.O.O. Products contain ▮▮▮▮ water than extra virgin olive oil. In fact, the E.V.O.O. line of dressings are composed of ▮% municipal water from St. Elmo, Illinois (Cronin Class Cert. Decl., Ex. B. at 44:2-7) followed by a blend of oils that is part extra virgin olive oil (▮%) and part soybean oil (▮%). *Id.* at 50:4-20; 69:21-25. The extra virgin olive oil constitutes only ▮% of the Product. *Id.* at 50:4-20; 69:21-25. These percentages are the same for each flavor in the E.V.O.O. Product line. *Id.* at 48:24-49:3.

3. Soybean oil is not a premium oil. *Id.* at 43:20-22. Olive oil costs six times more than soybean oil. *Id.* at 92:1-13.

4. Pinnacle positioned the E.V.O.O. Product as a premium salad dressing, which included prominently stating "E.V.O.O." on the front of each bottle to attract consumers looking for "better-for-you" ingredients. *Id.* at 107:7-25, 108:1-7. Pinnacle believed, based on market research, that consumers would pay a premium price for the E.V.O.O. dressing. *Id.* at 109:23-110:2.

5. Consumers, according to Pinnacle's Product research, do not see a difference between "100% extra virgin olive oil" and "made with extra virgin olive oil." *Id.* at 68:13-17:

7

> *In our concept testing we actually tested "100 percent E.V.O.O." and "Made with E.V.O.O.," and what we found out consumers really didn't see much between the two of those labels.*

### D.   Plaintiff's Experts

#### 1.   Paul Miller, Agricultural Scientist

Plaintiff produced the expert report of Agricultural Scientist Paul Miller in conformance with expert disclosure deadlines on June 15, 2018. A copy of Mr. Miller's expert report was filed simultaneously with Plaintiff's Motion for Class Certification on September 21, 2018 and referred to herein as the "Miller Expert Report."

It is Paul Miller's professional opinion that consumers would expect the challenged Products at issue here to consist primarily of extra virgin olive oil, some vinegar, and flavoring, such as sundried tomatoes (for the Sundried Tomato flavored challenged Product) or garlic and basil (for the Garlic and Basil Italian challenged Product). Consumers would not expect the challenged Products to contain tap water or soybean oil. It is also his opinion that consumers place a much higher value on extra virgin olive oil and do not view soybean oil, or water, as comparable to extra virgin olive oil. Miller Expert Report at page 1, ¶ 3.

#### 2.   Plaintiff's Expert Dr. Jean–Pierre H. Dubé, The University of Chicago

Plaintiff also produced the expert report of Dr. Jean–Pierre H. Dubé in conformance with expert disclosure deadlines on June 15, 2018. A copy of Dr. Dubé's expert report was filed simultaneously with Plaintiff's Motion for Class Certification on September 21, 2018 and referred to herein as the "Dubé Expert Report."

Dr. Dubé states in his report that a methodology exists to determine economic damages in this case on a classwide basis. It is Dr. Dubé's expert opinion that it is possible to determine classwide economic damages in this case using conjoint analysis. Dubé Expert Report at 1.

## II.     LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), the Court can only grant "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Whitfield v. Atchingson*, case no. 13-cv-653-SMY-RJD, 2017 WL 3707180 (S.D. Ill. Aug. 28, 2017). When deciding a motion for summary judgment, the Court shall "examine the record and all reasonable inferences in the light most favorable to the non-moving party." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment ***must be denied*** "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party." *Id.*

Furthermore, summary judgment can be denied if discovery has not been completed. *See e.g. Smith v. Lakin*, No. 15-cv-860-NJR, 2016 WL 173058 (S.D. Ill. May 2, 2016)("allowing Defendants to proceed on a motion for summary judgment at this juncture is premature, because Plaintiff has not had the opportunity to complete discovery to provide support for his allegations."); *Phillips v. Walker*, case no. 10-cv-034-GPM, 2010 WL 3717376, *1 (S.D. Ill. Sept. 14, 2010)(denying summary judgment motion, holding that "motion[s] for summary judgment are premature"); *see also Blocker v. City of Chicago*, case no. 17-cv-00055, 2017 WL 3278323, *2 (N.D. Ill. Aug. 2, 2017) ("Because discovery has not yet commenced, summary judgment is premature, and I deny [plaintiff]'s motion for summary judgment."); *Sherako v. U.S. Foods, Inc.*, No. 15-cv-8485, 2016 WL 7014064, *1 (N.D. Ill. Dec. 1, 2016) ("As for defendant's motion for summary judgment, it is premature, especially in light of the extended discovery period.").

### III. ARGUMENT

#### A. Defendant's Motion for Summary Judgment is Premature

Defendant's motion for summary judgment is premature, given that the parties agreed, and the Court so ordered, that discovery be limited to class certification issues and that merits discovery occur after the Court has ruled on the motion for summary judgment.

On March 19, 2018, Defendant and Plaintiff entered into a Joint Motion regarding discovery that stated in no uncertain terms that only discovery related to class certification discovery would occur at this juncture, and that the parties would:

> …hold a meet and conference within 14 days of the Court's ruling on the Motion for Class Certification and thereafter propose to the Court a revised schedule for merits-related discovery….

March 19, 2018 Joint Motion of the Parties (Dkt. 34). Based on the above-representations, the Court adopted the proposal, and set a revised scheduled for class certification discovery and briefing only, leaving merits discovery to be determined at a later date. *See* March 27, 2018 Order [that] Adopts the Deadlines Proposed in the Parties' March 19, 2018 Motion (Dkt. 36).

Indeed, taking advantage of the parties' agreement and Court order that discovery at this stage was to be limited to only class certification issues, Defendant refused to produce any discovery not related to class certification. As stated in Defendant's objection to Plaintiff's Requests for the Production of Documents:

> Class Discovery. Pinnacle objects to each request seeking documents that are unnecessary to the Court's determination of whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. Pinnacle will respond further to these requests…following the Court's ruling on class certification.

Ex. B (Defendant's Response to Plaintiff's First Set of Requests for the Production of Documents).

And with respect to Plaintiff's First Set of Interrogatories, Defendant responded as follows:

> Some of Plaintiff's interrogatories are objectionable, among other reasons, because they seek information unnecessary to the Court's determination of whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, which is the focus of discovery at this stage of the case.

Reese Decl. Ex. C. And with respect to Plaintiff's notice of deposition of Defendant pursuant to Federal Civil Procedure Rule 30(b)(6), Defendant took the same position:

> Pinnacle object to the Notice to the extent it seeks information that is irrelevant to the Court's determination of whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See* L.R. 23.1(a) (giving "priority" to class certification discovery, and anticipating that pure merits discovery would proceed in a second phase pursuant to a second scheduling order to be entered after class certification).

Reese Decl. Ex. A.

Accordingly, pursuant to the Court's Order and Defendant's objections to discovery, only class certification issues have been explored in discovery. Merits discovery has not been conducted. Yet, Defendant now moves for summary judgment on the merits. This is both premature and unfair. Accordingly, Defendant's motion for summary judgment must be denied as premature. *See e.g.*, *Smith*, 2016 WL 173058 at *1 (S.D. Ill. May 2, 2016)("allowing Defendants to proceed on a motion for summary judgment at this juncture is premature, because Plaintiff has not had the opportunity to complete discovery to provide support for his allegations."); *Phillips*, 2010 WL 3717376 at *1 (S.D. Ill. Sept. 14, 2010)(denying summary judgment motion, holding that "motion[s] for summary judgment are premature"); *see also Richardson v. City of Chicago,* 314 F. Supp.3d 999, 1015 (N.D. Ill. 2018) ("The…Defendants dispute [Plaintiff]'s characterization of their discovery responses and tactics, but these disputes simply highlight why summary judgment would be premature"); *Sherako*, 2016 WL 7014064 at *1 (N.D. Ill. Dec. 1,

11

2016) ("As for defendant's motion for summary judgment, it is premature, especially in light of the extended discovery period.").

Finally, underscoring the prematurity – and unfairness – of Defendant's motion for summary judgment is that Defendant has refused to produce discovery on the very issues that it now moves for summary judgment. For example, Defendant argues that "Plaintiff cannot prove that he paid a premium for Wish-Bone." But in responding to discovery, Defendant objected and refused to produce information on this very topic, stating that pricing data comprised "information that is irrelevant to the Court's determination of whether this action may proceed on a classwide basis." Reese Decl. Ex. A (Defendant Pinnacle Foods Group, LLC's Responses and Objections to Plaintiff's Notice of Rule 30(b)(6) at Topic No. 8, page 11).

Accordingly, Defendant's Motion should be denied as premature.

### B. Alternatively, Defendant's Motion Must be Denied Because Defendant has not Carried Its Burden Under Federal Civil Procedure Rule 56

#### 1. The Terms EVOO and Extra Virgin Olive Oil and the Amount of Extra Virgin Olive Oil is Material

Defendant argues that "Plaintiff has no evidence that consumers interpret the phrases EVOO Dressing and Made With Extra Virgin Olive Oil on Wish-Bone's label to mean that Wish-Bone contains EVOO exclusively [or] that the presence of a second oil in addition to EVOO is material to the purchase decision of reasonable consumers." (Def. Mtn. at 11). This argument is wrong for two reasons.

As explained above, since there has been no merits discovery on the issue, it is premature and unfair to argue that summary judgment should be granted because there is "no evidence" as Defendant argues in its Motion.

Second, Defendant's claim that there is "no evidence" is patently wrong. Even with the limited discovery to date, there is ample evidence of the materiality of the claims EVOO and Extra Virgin Olive Oil. There is also ample evidence that consumers would expect the product to be mainly made of extra virgin olive oil, instead of tap water and soybean oil.

As Defendant concedes, Plaintiff has submitted the expert report of Paul Miller. In Mr. Miller's expert report, Mr. Miller states that it is his professional opinion that consumers would expect the challenged Products at issue here to consist primarily of extra virgin olive oil, some vinegar, and flavoring, such as sundried tomatoes (for the Sundried Tomato flavored challenged Product) or garlic and basil (for the Garlic and Basil Italian challenged Product), and that is it. Consumers would not expect the challenged Products to contain tap water or soybean oil. It is also Mr. Miller's opinion that consumers place a much higher value on extra virgin olive oil and do not view soybean oil, or water, as comparable to extra virgin olive oil. Miller Expert Report at page 1, ¶ 3.

And the Miller Expert Report is not the only evidence demonstrating the materiality of extra virgin olive oil and consumer expectations that a product labeled as EVOO would not be comprised of tap water and cheap soybean oil and not premium extra virgin olive oil. As testified to in the deposition of the plaintiff Aaron Korte:

> A: **If it was an olive oil dressing, I would expect it to be olive oil as the only oil.**

Cronin Class Cert. Decl. Ex. A (61:3-6). Likewise, Mr. Korte testified that:

> A: In my opinion, I think the label said – had EVOO, made with extra virgin olive oil, and I believed it to be a dressing made with olive oil and seasonings. And when I looked at the back of the label, I notice that it was not only olive oil, and I believe it was misrepresented on the front of the bottle.
>
> Q: Because it had soybean oil?
>
> A: Correct.

13

Cronin Class Cert. Decl. Ex. A at 43:16-19.

Finally, Defendant's own documents and other discovery produced in response to class discovery shows the materiality of the statements and ingredients. For instance, Plaintiff took a 30(b)(6) deposition of Defendant on May 23, 2018. During that deposition, Defendant conceded that consumers equated "Made with EVOO" to mean "100 percent E.V.O.O." *See* Cronin Class Cert. Decl. Ex. B (Pinnacle 30(b)(6) deposition) at 68:14-17.

And the limited documents that Defendant has produced to date confirm this materiality. As stated in one of the internal documents produced from Defendant's files in the limited production of discovery to date:

> Consumers have been progressively shopping the shelf stable salad dressings category less as their needs and expectations are changing. One of the main reasons consumers are shopping the category less is that they are making their own and using better for you ingredients such as extra virgin olive oil…Extra Virgin Olive Oil is the most widely accepted and known of the "better oils' and has been seen quite a bit of growth itself in the past years. It has been popularized by celebrity chefs over the past few years and seems to have a set of better for you benefits widely embraced by consumers…EVOO has many of these health benefits that consumers are looking for and our dressing give them another way to get more of it into their diet.

Reese Decl. Ex. E (February 12, 2016 email to Steven DeFrino, Pinnacle Director of Marketing at PIN00002179-2180).[2]

And in another document based upon consumer research, over 50% of the consumers believe that EVOO consists of "high quality agreements." Reese Decl. Ex. F November 2016 Wishbone EVOO Unlocking New Triers' Insights at PIN00002533-2587 at PIN00002564). And Defendant also discussed internally, that, when it comes to oils, it is extra virgin olive oil that is

---

[2] Plaintiff has not yet deposed Mr. DeFrino, but anticipates it will do so once the case enters the merits discovery stage.

consider a high quality ingredient.  Reese Decl. Ex. E (PIN0002179-80)("How would [Pinnacle] characterize consumers' views and understanding of EVOO – what does it signal to them?  Extra Virgin Olive Oil is the most widely accepted and known of the "better oils")  However, as revealed in discovery, Defendant's "EVOO" Product is not made up of "high quality ingredients."  Rather, it is mainly municipal tap water and cheap soybean oil, not Extra virgin olive oil (EVOO).  Cronin Class Cert. Decl. Ex. B (Pinnacle 30(b)(6) Depo.) at 44:2-6; Miller Expert Report at 1 ("Consumers would not expect the Challenged Products to contain tap water or soybean oil.  It is also my opinion that consumers place a much higher value on extra virgin olive oil and do not view soybean oil, or water, as comparable to extra virgin olive oil.").

And in another survey produced in discovery, it states that "oil and vinegar is the primary substitute for pourable salad dressings", with 59% of consumers responding that a single oil – *i.e.* olive oil – and vinegar is what is used to dress salad dressing.  Defendant's claim that a majority of consumers would expect a blend of oils is contradicted by this survey, which shows that only 14% would use "different unsaturated salad oils."  Reese Dec. Ex. G (Salad Dressings Attitude & Usage Study, PIN00002776-2839 at 2806).  And these documents reflect consumer preference for olive oil.  Reese Ex. G at PIN00002807 ("Prefer the taste of homemade dressing better, using extra virgin olive oil").   Indeed, even with bifurcation of discovery the limited evidence developed to date shows that Defendant released and marketed its misleading Wishbone EVOO line of products to capture the market of people who made their own salad dressings.

### 2. Defendant's Argument Regarding Pricing is Wrong and Contradicted by the Facts

Defendant argues that "Plaintiff cannot prove that he paid a premium for Wish-Bone over similar dressings." (Def. Mtn. at 15). This is utterly untrue. Retail purchase price for the products are maintained by Defendant, the retail stores that sells the products as well as third-party aggregators of pricing data such as Symphony IRI. Collection of this information from these sources can be achieved easily by subpoena from the third-parties, and from Defendant through document requests, depositions and interrogatories during the merits phase of discovery.

Underscoring why Defendant's argument is premature, at best, however, is the fact that Defendant has refused to produce this information, stating that pricing data comprise "information that is irrelevant to the Court's determination of whether this action may proceed on a classwide basis." Reese Decl. Ex. A. (Defendant's Responses and Objections to Plaintiff's Notice of Rule 30(b)(6) Deposition) Topic No. 8, page 11.

And as explained by University of Chicago economist Dr. Jean-Pierre Dubé in his widely recognized and court-accepted damages methodology, the price premium can be easily calculated from the information. Dubé Expert Report at 12.

Moreover, for Defendant to argue that Plaintiff cannot prove the retail price he paid is both false and in bad faith given Defendant's prior representations to this Court when removing the matter from state court. Specifically, in its notice of removal, Defendant told this Court that the retail price for the product was $2.50. *See* Pinnacle Notice of Removal (Dkt. 1) at page 5, ¶ 23 ("During 2016, Pinnacle sold approximately 3,719,000 bottles of the Dressing in the United States. At an average retail price of $2.50 per bottle, the nationwide sales for 2016 totaled approximately $9.3 million…. In 2016, Illinois sales of the Dressing totaled approximately $202,000.").

Defendant also argues that the premium price for the Wishbone EVOO products is not attributable to the phrases "EVOO" or "Made with Extra Virgin Olive Oil" on the labeling. (Def. Mtn. at 17). This too is untrue and directly contradicted by the expert report of Dr. Jean-Pierre Dubé. As explained at length by Dr. Dubé:

> I have been asked by counsel for Plaintiffs to provide an expert opinion on whether a method exists to determine economic damages in this case on a classwide basis using common evidence for the following misrepresentations (hereafter "Challenged Claims"):
>
>> i. Defendants' claim on the Challenged Products' label that the Challenged Products are "Made with Extra-Virgin Olive Oil,"
>>
>> ii. Defendants' "EVOO" claim on the Challenged Products' labels.
>
> It is my opinion that it is possible to determine classwide economic damages in this case using Conjoint Analysis. I am providing an expert opinion regarding the following matters:
>
>> i. The existence of a methodology that can measure and quantify the impact of the Challenged Claims on the packaging of the Challenged Products on a classwide basis.
>>
>> ii. A description of the methodology and its implementation, given the existence of such methodology and suitable data, and the feasibility of measuring (a) the incremental consumer willingness-to-pay for the Challenged Products due to the Challenged Claims; and (b) the price premium charged for the Challenged Products due to the Challenged Claims.

Dubé Expert Report at 2.

In sum, Defendant's arguments for summary judgment regarding ability to prove damages is completely misplaced. Dr. Dubé has stated that he is able to calculate the damages, and with relative ease based on a damages methodology widely accepted by the Courts. The only reason he has not done the calculation is that Defendant has refused to produce the relevant data. Dubé Expert Report at 25. ("The data necessary to conduct my analysis and damage calculations are available from several sources including

17

Defendants' own business records. These records have not been produced yet as Defendant maintains that they are not needed for class certification."). Accordingly, Defendant's arguments must be rejected and its motion for summary judgment denied.

### 3. Defendant's Argument Regarding Plaintiff's Unjust Enrichment Claim Also Fails for the Same Reasons as Those Stated Above

Defendant argues that "Plaintiff's unjust enrichment claims fails for the same reason his ICFA and MMPA claims fail". (Def. Mtn. at 19). But as seen above, Defendant's arguments regarding Plaintiff's ICFA and MMPA claims are wrong. Accordingly, for the same reasons as stated above, Defendant's argument regarding Plaintiff's unjust enrichment claim also fail.

### 4. Defendant's Argument Regarding Class Certification – While Inappropriate in a Motion for Summary Judgment – Underscore Why a Class Should be Certified.

Defendant argues that it should prevail on summary judgment, and, as a result, Plaintiff's motion for class certification should be denied. (Def Mtn. at 20). As seen above, however, Defendant's arguments are wrong. Accordingly, Defendant's argument against class certification also fails.

What Defendant's argument in its summary judgment motion regarding class certification does do, however, is underscore why class certification should be granted here. Tellingly, Defendant states that "the grounds on which Pinnacle is entitled to summary judgment would apply equally to any other member of the [putative] class." (Def. Mtn. at 20). In other words, Defendant is stating that its argument for summary judgment are a common defense to each and every class member. Courts routinely recognize that a common defense presented to all proposed class members satisfies the commonality, typicality and predominance, requirements of Federal Civil Procedure Rule 23. *See e.g Ringswald v. County of DuPage*, 196 F.R.D. 509 (N.D. Ill. 2000) (common defense support finding that class certification should be granted).

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment must be denied.

Date: October 25, 2018								Respectfully submitted,

										**REESE LLP**

									By: */s/ Michael R. Reese*
										Michael R. Reese
										*mreese@reesellp.com*
										100 West 93rd Street, 16th Floor
										New York, New York  10025
										Telephone: (212) 643-0500
										Facsimile: (212) 253-4272

										**DONOVAN ROSE NESTER, P.C.**
										Sean K. Cronin
										*Scronin@drnpc.com*
										201 South Illinois Street
										Belleville, Illinois 62220
										(618) 212 – 6500

										**THE KREISLER LAW FIRM LLC**
										Brian T. Kreisler
										*brian@kreislerlawfirm.com*
										Post Office Box 1353
										O'Fallon, Illinois  62269
										Telephone: (618) 589-2165
										Facsimile: (618) 632-5095

										*Proposed Co-Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on October 25, 2018, I caused a true and correct copy of the foregoing document to be filed electronically using the Court's CM/ECF system, which will serve notice upon all counsel of record. I also certify that on October 25, 2018 I served an unredacted copy of the foregoing via email to all counsel of record.


                By: */s/ Michael R. Reese*
                   Michael R. Reese