**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ARRON KORTE,** *individually and on behalf of others similarly situated*, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 17-CV-199-SMY-MAB ) |
| **PINNACLE FOOD GROUPS LLC,** | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Arron Korte ("Korte"), individually and on behalf of all similarly situated persons, filed a 3-Count Class Action Complaint against Defendant Pinnacle Food Groups LLC ("Pinnacle"), asserting violations of Illinois' Consumer Fraud Act ("ICFA"), 815 Ill.Comp.Stat. § 505/1, *et seq.*, and Missouri's Merchandising Practices Act ("MMPA"), Mo.Rev.Stat. § 407.010, *et seq.*, with respect to the sale of Wish-Bone branded salad dressing labeled "E.V.O.O. – Dressing Made with Extra Virgin Olive Oil."  Now pending before the Court are Defendant's Motion for Summary Judgment (Doc. 40), Plaintiff's Motion to Certify Class (Doc. 42), and Defendant's Motion to Strike Allegations in the Complaint Regarding the Proposed Missouri Class for Lack of Personal Jurisdiction (Doc. 45).  The parties have filed responses to each of the motions (Docs. 57, 52, and 47) and replies to the Motion for Summary Judgment and Motion for Class Certification (Docs. 59 and 60).

**BACKGROUND**

Pinnacle developed, produced, marketed, and sold salad dressings under the Wish-Bone

label. In January 2016, it launched a new type of salad dressing that contained extra virgin olive oil ("EVOO") in 5 different flavors including Caesar Vinaigrette. The label on the front of the dressing bottle states: "Wish-Bone E.V.O.O. Dressing made with Extra Virgin Olive Oil Caesar Vinaigrette with flavors of Parmesan & Romano Cheese, Garlic, & Cracked Black Pepper" (Doc. 41-1, p. 96 (stylistic font and marks omitted)). The words "made with" are in a comparatively smaller font and written vertically. According to Kristen Thompson, Marketing Director for Pinnacle, the label was changed in June 2017 to indicate that the dressing was "Made With Extra Virgin Olive Oil Based Blend of Oils" (8/8/18 Kristen Thompson Declaration, ¶ 15, (Doc. 52-4)). By December 2017, dressings with the original label no longer appeared on store shelves (*Id*.). In January 2018, Pinnacle changed the shape and volume of the bottle – from a 12- ounce cylindrical glass container to a 15-ounce "paddle-shaped" glass container (*Id*. ¶¶ 14-15).

The back label contained a list of ingredients including "Water, Extra Virgin Olive Oil, Soybean Oil, Distilled Vinegar, Sugar, Salt, Red Wine Vinegar . . . ." (Doc. 41-1, p. 100). Ingredients are listed "in descending order of predominance by weight." 21 C.F.R. § 101.4(a). According to Steven Gunther, Pinnacle's Senior Vice President of Research and Development, the oil blend includes 52% EEOV and 48% soybean oil (Steven Gunther Deposition, pp. 7, (Doc. 52-3)).

It is undisputed (although Korte argues not relevant) that both water and other oils are necessary to create the viscosity, taste, and liquidity of the salad dressing. Water is needed to dilute the vinegar in the dressing (which is commercially used in a concentrated form) and to manage viscosity, and soybean oil is necessary to cut the EVOO, which solidifies when the dressing is refrigerated per the instructions on the bottle (9/19/18 Thompson Dec. ¶ 9 (Doc. 52-1); Gunther Dep. p. 88).

Pinnacle sold the salad dressing to retailers, wholesalers, and distributors, but not directly to consumers (9/19/18 Thompson Dec. ¶ 13). It did not set the price at which the dressing was sold by retailers (*Id*. ¶ 15). It did however offer various coupons to incentivize consumers to buy the salad dressings (8/8/18 Thompson Dec. ¶¶ 4-11). During the relevant time period, millions of coupons were distributed nationally through local newspapers or were placed with/on the products in stores or prior to shipment (*Id*. ¶ 7). The coupons ranged from $0.50 to $1.00 off per bottle (Doc. 52-4, p. 8, 13-14). According to Thompson, these coupons resulted in "the average value or discount, weighted by circulation, [of] approximately $0.87 off one bottle" (8/18/18 Thompson Dec. ¶ 7).[1]

Kraft and Ken's Steak House ("Ken's") are direct competitors of Wish-Bone (Gunther Dep. p. 30). Both companies make salad dressing with EVOO and have labels stating as much.[2] Like Wish-Bone's salad dressings, Kraft's and Ken's dressings contain a blend of oils that include EVOO, canola oil, soybean oil, and/or vegetable oil. It is undisputed that Wish-Bone salad dressing contains more EVOO than Ken's or Kraft's (Gunther Dep. p. 50). EVOO is approximately 6 times more expensive than other oils (*Id*. 92).

In the Fall of 2016, Korte purchased a bottle of Wish-Bone's EVOO Caesar Vinaigrette from a Schnucks Supermarket in Belleville, Illinois (Aaron Korte Deposition, p. 70-71).[3] At the time of purchase, based on the information on the front label, he believed the dressing contained EVOO, seasonings, and vinegar, but not any other oils or water (*Id*. 42). Not until he used the dressing and looked at the back label did he realize the dressing contained soybean oil and water

---

[1] This figure is undisputed although it is unclear how it was derived.
[2] Kraft bottles state "Kraft Olive Oil Vinaigrettes Italian" on the label on the body of the bottle with "Made with Extra Virgin Olive Oil" on the neck of the bottle (stylistic font and marks omitted) (Doc. 52-3, p. 80) and Ken's bottles state "Ken's Steak House Italian with Extra Virgin Olive Oil Dressing & Marinade" on the body of the bottle (stylistic font and marks omitted) (Doc. 52-3, p. 85).
[3] Documents 41-2, 43-1, and 52-3 are excerpts of Korte's February 7, 2018 deposition.

(*Id*. 42).

Korte doesn't recall how much he paid for the dressing or whether it was on sale (*Id*. 75). It was the only Wish-Bone branded dressing he ever purchased (*Id*. 83, 87). Korte doesn't know anyone personally who has a similar opinion about the salad dressing's label (*Id*. 91). Korte has known Class Counsel Sean Cronin since high school and Cronin has been his friend and "legal counsel for many years" (*Id*. 96-97).

## DISCUSSION

### Class Certification

Korte moves for class certification under Rules 23(a), 23(b)((2), and 23(b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons who purchased the Products in the state of Illinois or Missouri during the period of February 4, 2016, to present.
>
> Excluded from the Class are: (a) Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; 9b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes itself from the Class in accordance with Court-approved procedures.

Korte, who is a Missouri citizen, is the sole representative of the class.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011)). To be certifiable, a class must first be "identifiable as a class," meaning that the class definitions must be definite enough that the class can be ascertained. *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659–61 (7th Cir. 2015). The plaintiff must then satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R.

Civ. P. 23(a). If Rule 23(a) is satisfied, the proposed class must fall within one of the three categories under Rule 23(b): "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

Plaintiff bears the burden of proving the proposed class satisfies the Rule 23 requirements and must do so through evidentiary proof – merely pleading the existence of the required elements will not suffice. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013). "It is sufficient if each disputed requirement has been proven by a preponderance of the evidence." *Messner*, 669 F.3d at 811.

### Ascertainability

A class may be certified only if its members can be ascertained. *Mullins,* 795 F.3d at 659. To show that a class is ascertainable, a plaintiff must offer a definition that is (1) precise, (2) defined by objective criteria, and (3) not defined in terms of success on the merits. *Id*. at 659–60. A class that is defined too vaguely fails to satisfy the "clear definition" component. *Id*. at 660. To avoid vagueness, a class definition needs to "identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id*.

Korte's proposed class consists of individuals who purchased Wish-Bone EVOO salad dressings labeled as "E.V.O.O. Made With Extra Virgin Olive Oil" from February 4, 2016 to the present. This class definition is overbroad as it is undisputed that Pinnacle stopped selling salad dressing with the relevant label by December 2017. Individuals who bought the salad dressing

with the new label which indicates the dressing contains a "blend of oils" would not have been deceived as alleged by Korte. An overbroad class definition, such as the class Korte proposes, violates the definiteness requirement because it includes individuals who are without standing to maintain the action on their own behalf. *Oshana*, 472 F.3d at 514. As such, the proposed class definition fails to meet the standard for ascertainability.

**Rule 23(a) Requirements**

"All class actions, no matter what type, must meet the four explicit requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015).

*Numerosity*

In order to meet the numerosity requirement, Korte must establish that there are a sufficient number of class members that joinder would be impractical. "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *Pruitt v. City of Chicago,* 472 F.3d 925, 926 (7th Cir. 2006). A plaintiff is not required to specify the exact number of persons in the class nor is a plaintiff required to establish the exact identity of the class members. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989) (citation omitted). Rather, "[a] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,* 747 F.3d 489, 492 (7th Cir. 2014).

Korte seeks to certify a class consisting of all Illinois and Missouri citizens who purchased the salad dressings in question. In response to an interrogatory, Pinnacle concedes that the numerosity requirement is met as to Illinois residents (Doc. 43-2, p. 7). Additionally, in its Notice of Removal, it represented that it had approximately $273,000 in sales of the dressing, at approximately $2.50 a bottle in Missouri (Doc. 2, p. 203). Thus, numerosity is satisfied.

*Commonality*

Rule 23(a)(2) requires plaintiffs to establish the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality demands that class members "suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350 (citation omitted). Ordinarily, "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). In other words, a common question exists where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mullins*, 795 F.3d at 679 (quoting *Wal-Mart*, 564 U.S. at 350).

Korte seeks to certify an Illinois and Missouri classes based on the ICFA and the MMPA. For liability to attach, both statutes require a deceptive act that a defendant intended the plaintiff to rely on, which caused actual damages. *Dubey v. Public Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009); *Thornton v. Pinnacle Foods Group LLC*, 2016 WL 4073713 (E.D. Mo. 2016). Korte contends the common label contained on all bottles of Wish-Bone's EVOO salad dressings and the common ingredients in the salad dressings raise a common claim applicable to all consumers. Whether the dressing label was false or misleading is relevant to the asserted claims and is capable of class-wide resolution. *See Suchanek*, 764 F.3d at 758 (question of "whether

packaging was likely to mislead a reasonable consumer" satisfies the commonality requirement). Therefore, the commonality requirement is satisfied.

*Typicality*

For typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). It is well-established that typicality is satisfied if the named representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992). Typicality and adequacy inquiries often overlap. *See Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999) (holding that if a plaintiff's claim is atypical, he is not likely to be an adequate representative).

Korte fails to demonstrate that his claim meets the typicality requirement. In *Suchanek*, the Seventh Circuit held that the named representatives' interests and legal claims aligned with those of the putative class, especially because they "proffered evidence to show the overwhelmingly negative response to the [coffee] product, the flood of complaints that followed the introduction of [the product] and numerous surveys that shed light on the preferences of [consumers] for premium (freshly brewed) coffee." 764 F.3d at 758. But the Court also noted that

certification must be denied where the named plaintiff "appeared to be the only person" in a "million-plus class that believed [the] defendant deceived consumers by using different formulae in found and bottled soda products." *Id*. (citing *Oshana*, 472 F.3d at 514). Similarly, in *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 747 (7th Cir. 2008), the Seventh Circuit reversed certification because there was no "evidence that anyone in the 500,000 person class other than Thorogood believed the allegations" that a dryer's stainless steel drum was defective. Id.

Here, there is a dearth of evidence that other consumers have complained that the salad dressing label was deceptive. Korte's expert, Dr. Dube, merely assumes in his report that the label is deceptive and offers an opinion on how damages can be calculated. (Jean-Pierre H. Dube Report p. 2). Korte's second expert, Paul Miller, opines that "consumers would expect the Challenged Products at issue here to consist primarily of extra virgin olive oil, some vinegar, and flavoring" (Paul Miller Report, p. 1). However, Miller did not conduct any consumer surveys, nor did he rely on any consumer studies, articles, reports, or surveys in reaching his opinions. Rather, his opinions are based solely on his experience and training as an agricultural scientist and his review of various reports, articles, and studies on the health benefits of EVOO and the level of consumption and importation of EVOO in the American market. *Id.*

Korte has not proffered a "flood of complaints" regarding the alleged deception, or provided expert evidence, surveys, or third-party analyses demonstrating any consumer's belief that the label was deceptive or that representations about the contents of the salad dressing were misleading. Instead, he has provided a list of 5 "complaints" about Wish-Bone's EVOO salad dressing from consumers who do not live in Illinois or Missouri that he purports meets the typicality requirements (Doc. 59-3):

> 1. "Consumer stated that she is upset that the first ingredient for the Wish-Bone EVOO is water."

2. "WISH-BONE IS USING DECEPTIVE ADVERTISING ON THEIR DRESSING E.V.O.O. BY PINNACLE FOODS GROUP LLC. CHERRY HILL, NJ 08003-3620."

3. "I have a question . . . you have a new product out EVOO . . . which implies that it is made with extra virgin olive oil . . . WHY is the 2nd ingredient soybean oil . . ."

4. "Consumer stated that is it very deceptive to have extra virgin olive oil on the front package of the product while the ingredients says that the product only has 2% of extra virgin olive oil."

5. "Consumer stated that she is upset that the first ingredient for the Wish-Bone EVOO is water."

(Id. (emphasis in original)).

But these complaints fall short. The first complaint does not mention that the consumer was deceived. The second complaint only states vaguely that Pinnacle is using "deceptive advertising" but makes no mention of the label or in what manner it could be deceptive. The third consumer is obviously not deceived by the label as she/he read the back list of ingredients and therefore was not deceived as to what the salad dressing contained. The same can be said of the fourth consumer who concludes that the salad dressing only contains 2% olive oil. Finally, the fifth consumer does not indicate that she/he was deceived in any manner.

Here, as was true with the failed classes in *Thorogood* and *Oshana*, there is an absence of consumer complaints that the salad dressing label is deceptive. Thus, typicality has not been satisfied.

*Adequacy*

A representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of*

*Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted). The adequacy requirement is satisfied when the named representative has "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and "[does] not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D.Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010).

The apparent longstanding close relationship between Korte and plaintiff's counsel Cronin merits some discussion in this regard. While Korte and Cronin are not related, Cronin's primary role in prosecuting this case notwithstanding the appearance of three other plaintiff's counsel, at the very least, raises a concern about potential conflicts of interest. *See Susman v. Lincoln American Corp.*, 561 F.2d 86, 90-91 (7th Cir. 1977) ("Since possible recovery of the class representative is far exceeded by potential attorneys' fees, courts fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members."); *Eubank v. Pella Corp.*, 753 F.3d 718, 722, 723-724 (7th Cir. 2014).

More importantly, a person whose claim is idiosyncratic or possibly unique is an unsuitable class representative. As the record suggests that no other potential class members share Korte's grievance against Pinnacle, his claim is idiosyncratic and his representation of the class is problematic. *See Suchanek*, 764 F.3d at 758; *Oshana,* 472 F.3d at 514. Accordingly, adequacy has not been satisfied.

**Rule 23(b) Requirements**

Given the above findings, a detailed analysis of the application of Rule 23(b) is unnecessary. That said, Korte's claims also fail on this point. Rule 23(b)(2) applies when a plaintiff is seeking injunctive relief and the defendant has "acted or refused to act on grounds that apply generally to the class." It is unclear what injunctive relief Korte hopes to acquire now that Pinnacle has changed the labeling for the salad dressing. Although the change in labeling would

not necessarily moot Korte's request for injunctive relief, he has offered no evidence of a "cognizable danger of recurrent" use of the offending label. *See Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *abrogated on other grounds by Jones v. Carter*, 915 F.3d 11447, (7th Cir. 2019)).

"Rule 23(b)(3) permits class certification only if the questions of law or fact common to the class members 'predominate' over questions that are individual to members of the class." *Messner*, 669 F.3d at 814. Rule 23(b)(3) requirements are "far more demanding" than the commonality and typicality requirements of Rule 23(a). *Id*. Because Korte has failed to demonstrate typicality, he obviously cannot meet Rule 23(b)(3)'s more rigorous standard.

For the foregoing reasons, Plaintiff's Motion to Certify Class (Doc. 42) is **DENIED**. In light of this conclusion, Pinnacle's Motion to Strike is **MOOT** (Doc. 45).[4]

## Summary Judgment

### Discussion

Generally, motions for summary judgment can be filed "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). In this case, the parties and the Scheduling Order anticipated that class discovery would be completed and class certification decided prior to the commencement of merits discovery (Docs 23, 34, and 36). In his response to the Motion for Summary Judgment, Korte outlines in detail Pinnacle's objections to merits discovery based on the Court's Order and Local Rule 23.1(a)'s requirement that "priority shall be given to discovery on class certification issues." Therefore, Pinnacle's Motion for Summary Judgment is premature

---

[4] Korte argues that this motion filed pursuant to Rule 23(d)(1)(D) and challenging personal jurisdiction is merely an untimely Rule 12(b)(6) motion. A Rule 23(d)(1)(D) motion tests the adequacy of class representation and is appropriately filed at the time class certification is sought. As such, the Motion as captioned is not untimely. *See e.g. Garvey v. American Bankers Insurance Company of Florida*, 2019 WL 2076288 (N.D. Ill. 2019) (finding that a challenge to personal jurisdiction via Rule 23(d)(1)(D) is timely).

and **DENIED without prejudice**.  This matter is shall be referred to the Magistrate Judge for entry of a supplemental Scheduling and Discovery Order, including a timeline for merits discovery and a dispositive motion deadline.

## Conclusion

For the foregoing reasons, Defendant's Motion to Strike (Doc. 45) is **MOOT**, Plaintiff's Motion for Class Certification (Doc. 42) is **DENIED**, and Defendant's Motion for Summary Judgment (Doc. 40) is **DENIED without prejudice**.  This matter is **REFERRED** to the Magistrate Judge for entry of a supplemental Scheduling and Discovery Order.

**IT IS SO ORDERED.**

**DATED:  September 11, 2019**

**STACI M. YANDLE**
**United States District Judge**